UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>GYEONG JEI LEE,<br><br>Defendant. | CASE NO.<br><br>**COMPLAINT**<br><br>Title 49, United States Code, Sections 46504 and 46506, and Title 18, United States Code, Section 113 |

BEFORE United States Magistrate Judge John L. Weinberg, Seattle, Washington. The undersigned complainant being duly sworn states:

### Count 1

### (Interference with Flight Crew Members and Attendants)

On or about September 24, 2020, in the Western District of Washington, and elsewhere, the Defendant GYEONG JEI LEE, on an aircraft in flight in the special aircraft jurisdiction of the United States, namely Korean Airlines Flight KE19 bound from Seoul Incheon Airport in South Korea to Seattle-Tacoma International Airport in SeaTac, Washington, did knowingly interfere, and attempt to interfere, with the

1  performance of the duties of flight attendants of the aircraft, and lessen the ability of the
2  attendants to perform those duties, by assaulting and intimidating the flight attendants.
3        All in violation of Title 49, United States Code, Section 46504.

### Count 2
### (Assault Within the Special Aircraft Jurisdiction of the United States)

      On or about September 24, 2020, in the Western District of Washington, and elsewhere, the Defendant, GYEONG JEI LEE, on an aircraft in flight in the special aircraft jurisdiction of the United States, namely, Korean Airlines Flight KE19 bound from Seoul Incheon Airport in South Korea to Seattle-Tacoma International Airport in SeaTac, Washington, did intentionally assault passenger E.P. by striking, beating, and wounding E.P.

      All in violation of Title 18, United States Code, Section 113(a)(4) and Title 49, United States Code, Section 46506.

      And the complainant states that this Complaint is based on the following information:

      I, Caryn J. Highley, being first duly sworn on oath, hereby depose and state as follows:

### AFFIANT BACKGROUND

1.     I am assigned to the Seattle Division of the Federal Bureau of Investigation (FBI) and am a member of the Seattle Safe Streets Task Force (SSSTF), which focuses on gang-related, violent crimes, as well as Organized Crime Drug Enforcement Task Force matters. I am a law enforcement officer currently authorized to investigate and enforce violations of federal criminal statutes, including those found in Title 18, 21 and 49 of the United States Code. I have received basic law enforcement training at the 20-week FBI Academy. This training focused on various aspects of conducting criminal enterprise investigations such as interviewing and interrogation techniques, physical and

electronic surveillance, development and management of confidential human sources, and arrest planning and execution.

2. The facts in this affidavit come from my personal observations, training and experience, and information obtained from other law enforcement officers and witnesses.

3. This affidavit is submitted for the limited purpose of establishing probable cause to believe that Defendant, GYEONG JEI LEE, has committed the offense of Interference with Flight Crew Members and Attendants, in violation of Title 49, United States Code, Section 46504 and Assault Within the Special Aircraft Jurisdiction of the United States, in violation of Title 18, United States Code, Section 113(a)(4) and Title 49, United States Code, Section 46506. I have not included every fact concerning this investigation. Rather, I have set forth the facts that I believe are necessary for a fair determination of probable cause.

4. This complaint is being presented electronically pursuant to Local Criminal Rule CrR 41(d)(3).

## SUMMARY OF PROBABLE CAUSE

5. On September 24, 2020, shortly after 4:30 p.m., Korean Airlines flight KE19 departed from Seoul Incheon International Airport bound for Seattle-Tacoma International ("SeaTac") Airport.[1] GYEONG JEI LEE, a resident of Aurora, Colorado, boarded this flight after visiting family in South Korea. Although LEE was assigned a seat near the front of the aircraft, because the flight was relatively empty, he relocated to a preferred seat near the back of the plane during flight. The flight, which was roughly nine hours long, departed from South Korea, traversed the Pacific Ocean and landed at SeaTac Airport at approximately 9:50 a.m.

6. Approximately one hour before landing, while the plane was over the North Pacific Ocean, west of Seattle, Washington, LEE asked a flight attendant to provide him with a metal hairpin. LEE used this hairpin to open the SIM card tray on his cellular

---

[1] Sea-Tac Airport is located in SeaTac, Washington, within King County.

device. Shortly after obtaining this hairpin, which was approximately 5 inches long (2 ½ inches per side bent in half) and had sharp metal points at the ends, LEE began threatening flight attendants and passengers onboard the plane.

7. Approximately forty minutes before landing, LEE placed a plastic shopping bag over his head, to which he added breathing holes. With the plastic bag on his head, LEE rose from his seat, armed with the sharp hairpin. Standing in the rear of the aircraft, LEE threatened Flight Attendants J.K. and J.L. LEE lunged at Flight Attendant J.K., holding the hairpin in his hand, and demanded that J.K. call the cockpit so he could speak with the plane's Captain. While making these demands, LEE waived the hairpin around like a weapon. LEE also held the hairpin up to Flight Attendant J.L.'s face, threatening to kill J.L. and the other flight attendants. Specifically, LEE told the flight attendants "Who are you? Go that way. I will kill all of you," "don't move," and "never say anything." After demanding to speak to the Captain, LEE ordered the two flight attendants to their knees and continued threatened them. The flight attendants complied, and J.L. explained she was fearful for her safety.

8. After threatening J.K. and J.L., LEE quickly traveled to the front of the aircraft where the cockpit was located. While at the front of the plane, LEE encountered another flight attendant, who LEE shouted at in Korean, and she tried to prevent LEE from approaching the cockpit. Unable to stop LEE, the flight attendant asked Passenger E.P., seated in seat 7A near the front of the aircraft, for help. After noticing that LEE was visibly angry, E.P. attempted, unsuccessfully, to calm LEE down. When LEE began kicking and yanking on the cockpit door, E.P. tried to physically restrain LEE. A confrontation ensued, during which LEE punched E.P. in the torso.

9. Reserve Pilot H.K., who was resting in the plane's main cabin, went to the front of the aircraft after hearing a disturbance in the first class galley. When H.K. approached, LEE was kicking the cockpit door. LEE then announced that he had a bomb and demanded that the plane be diverted to land in Vancouver, Canada. H.K. attempted to speak to LEE, in order deescalate the threat, and LEE again informed H.K. that he had

a bomb. According to witnesses, LEE yelled in both Korean and English that he had a bomb and claimed that everyone was going to die.

10. Flight attendants notified Pilot Captain H.K.O., who was also resting in the main cabin area of the aircraft, about the disturbance onboard. As H.K.O. responded to the front of the aircraft, Passenger E.P. and a flight attendant tried to encourage LEE to move towards the back of the aircraft. H.K.O. then saw LEE run towards the front of the plane and begin screaming, cursing, and kicking the cockpit door. H.K.O. asked Flight Attendant N.J.P. to gather additional passengers to help subdue LEE, and instructed N.J.P. to locate the Taser that the flight crew kept onboard. After N.J.P. obtained the Taser, LEE became agitated, threatening to kill N.J.P. while running towards her. Believing that LEE may kill her, N.J.P. fired the Taser, which struck LEE, among other places, in the jaw. After N.J.P. fired the Taser, the captains, passengers and other flight attendants physically subdued LEE and placed him in restraints. For the remainder of the flight, multiple individuals onboard the plane restrained LEE until they safely landed at Sea-Tac Airport.

11. At approximately 9:50 a.m., the flight landed at Sea-Tac Airport, where Port of Seattle Police Department (POSPD) officers boarded the plane and took LEE into custody. After LEE was removed from the flight, during interviews, multiple flight crew members stated they feared for their lives because they saw LEE using significant force to attempt to open the cockpit door and believed he may have a bomb.

12. While being examined by Port of Seattle Medics, LEE reported that he took lithium for bi-polar disorder and appeared to be exhibiting manic behavior. As a result of the incident, LEE sustained a small laceration to his face and had marks on his ankles, but did not need immediate medical assistance.

13. LEE was escorted off the plane and taken into Customs and Board Protection (CBP) area for processing and interview. When speaking with law enforcement, LEE admitted to threatening the flight crew. LEE explained that he used a hairpin, obtained from a flight attendant, to threaten the crew, demanding that the plane

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Case 2:20-mj-00615-JLW   Document 1   Filed 09/25/20   Page 6 of 7

be redirected to land in Vancouver, Canada. LEE stated "I wanted to go to Vancouver for a vacation, I have never been there." When asked about the hairpin, LEE noted "I wanted to hurt them, but I didn't." LEE admitted that what he did was "wrong." LEE went on to express concern that Colorado law enforcement officers had placed satellites around his home and business, spying on him and his family since 2010. LEE stated he had received mental health treatment at a Korean hospital in or around 2010. LEE explained that he was prescribed medication, believed to be an anti-psychotic based on statements made to medical personnel, and had taken this medication the night before the flight (September 23, 2020) an again in the presence of law enforcement on September 24, 2020. LEE stated he took this medication daily.[2] LEE was taken to the hospital, where he was cleared by medical personnel, and was arrested.

---

[2] I have since spoken to LEE's family, who informed me that LEE was previously prescribed Lithium but had been taken off this medication based on his doctor's recommendation. Beginning in January 2020, and ending in May 2020, LEE was tapered off of Lithium and started taking an alternative medication. LEE then suffered a mental breakdown, and his doctors attempted to adjust his medication, which LEE refused resulting in LEE flying to South Korea.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## CONCLUSION

14. Based on the above facts, I respectfully submit that there is probable cause to believe that Defendant, GYEONG JEI LEE, did knowingly and intentionally commit the offenses of Interference with Flight Crew Members and Attendants, in violation of Title 49, United States Code, Section 46504, and Assault Within the Special Aircraft Jurisdiction of the United States, in violation of Title 18, United States Code, Section 113(a)(4) and Title 49, United States Code, Section 46506.

_____
Caryn J. Highley, Complainant
Special Agent, Federal Bureau of Investigation

The above-named agent provided a sworn statement attesting to the truth of the contents in the foregoing Complaint and Affidavit. Based on the Complaint and Affidavit, the Court hereby finds that there is probable cause to believe the Defendant committed the offense set forth in the Complaint.

Dated this 25th day of September, 2020.

_____
HON. JOHN L. WEINBERG
United States Magistrate Judge